IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| William B. Gray, III, d/b/a Greenwood Clinic of Chiropractic, and B and K Services, Inc., individually and for the benefit and on behalf of all others similarly situated, | ) ) ) ) ) ) | Case No. 8:08-cv-01833-GRA |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| The Talking Phone Book, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**FINAL JUDGMENT AND ORDER APPROVING CLASS SETTLEMENT AND
AWARD OF ATTORNEYS' FEES AND EXPENSES**

This matter is before the Court on Plaintiffs' Unopposed Motion for Final

Approval of Class Action Settlement and Motion for Award of Attorneys' Fees and

Expenses.

On March 14, 2012, this Court entered an Order Preliminarily Approving the

Proposed Class Settlement, Directing the Issuance of Notice to the Class, and

Scheduling Final Fairness Hearing (the "Preliminary Approval Order"). The

Preliminary Approval Order granted preliminary approval of a proposed Class Action

Settlement Agreement (the "Settlement") between Plaintiffs William B. Gray, III,

d/b/a Greenwood Clinic of Chiropractic ("Gray") and B and K Services, Inc. ("B&K")

(collectively, the "Plaintiffs" or the "Class Representatives"), the Class conditionally

certified by this Court on February 1, 2010, and Defendants White Directory Holdings

Carolina, LLC (now known as LocalEdge Carolina, LLC) and Hearst Communications, Inc. (collectively, "Defendants").

Thereafter, notice of the Settlement was provided to the Class pursuant to the Preliminary Approval Order.  There have been no objections to the Settlement and no requests for exclusion from the Settlement.

The Court has reviewed and considered the submitted memoranda, documents and exhibits, including the Settlement Agreement and Notice.  For the reasons stated herein, this Court finds that the Settlement is fair, reasonable, and adequate, and finally approves the Settlement and enters final judgment.  The Court also finds that the attorneys' fees and expenses requested are reasonable and grants Plaintiffs' motion for an award of attorneys' fees and expenses in the amount requested.

**I.    BACKGROUND AND THE TERMS OF THE SETTLEMENT**

**A.    The Action and Prior Proceedings**

On or about March 19, 2008, Plaintiff Gray filed his original Complaint, in which he asserted claims individually and on behalf of a putative class against various defendants in the Court of Common Pleas of the State of South Carolina, Eighth Judicial Circuit, County of Greenwood (the "Action").  On or about May 9, 2008, defendants removed the Action to this Court.  The Complaint, as later amended, dismissed claims against the original defendants and added as defendants White Directory Holdings Carolina, LLC and Hearst Communications, Inc.

This class action is based on specific allegations concerning local distribution of specific telephone directories.  Plaintiffs claim that although White Directory states that it did saturate the local markets with copies of The Talking Phone Book, White Directory

in specific locations distributed fewer copies of those particular local area telephone directories of The Talking Phone Book than White Directory was obligated to distribute.

On February 1, 2010, following a period of document discovery and depositions, this Court granted Plaintiffs' motion for class certification with respect to claims for breach of contract, breach of the implied duty of good faith and fair dealing, and statutory unfair trade practices, appointing Class Counsel, appointing Gray and B&K as Class Representatives, and conditionally certifying a Class of all individuals or businesses who purchased, and entered into contracts for, yellow pages advertising in The Talking Phone Book "Greenville," "Lakelands," and "Newberry" telephone directories during the Class Period, which the Court defined as:

> From January 1, 2005 to March 15, 2008 for The Talking Phone Book "Greenville" telephone directory and from April 2, 2007 to March 15, 2008 for The Talking Phone Book "Newberry" and "Lakelands" telephone directories.

(Order, Feb. 1, 2010, at p. 6 & n. 12.)

Defendants appealed to the Fourth Circuit Court of Appeals from the Order conditionally certifying the Class. On August 25, 2011, the Court of Appeals affirmed the Order.

While Plaintiffs have maintained that their allegations and claims are meritorious, Defendants contend that Plaintiffs' factual and legal allegations are without merit and that the directories were widely distributed. Defendants have denied that they have any liability to Plaintiffs and the Class, and maintain that in any event Class Members suffered no damages. Defendants have raised a number of defenses to the claims asserted and would undoubtedly continue to vigorously defend this Action in the event this Settlement were not finally approved by the Court.

Extensive settlement negotiations took place between Class Counsel and Defense Counsel over an extended period of time, culminating in a Class Action Settlement Agreement, dated January 27, 2012.  After extensive litigation, discovery and hard fought arm's length settlement negotiations, Defendants and Plaintiffs, on their own behalf and on behalf of the Class, agreed to settle the Action to avoid the expense, burden, risk and uncertainty inherent in any litigation.

The Court preliminarily approved the Settlement on March 14, 2012, and ordered that notice be given to the Class Members.  The Court also approved the Class Notice and notice methodology described in the Settlement Agreement, which called for individual notice to Class Members, finding, pursuant to Fed. R. Civ. P. 23(c)(2)(B), that it was "the best notice that is practicable under the circumstances." The Court further approved the selection of Rust Consulting to serve as the Claims Administrator.

Following the grant of preliminary approval by this Court, the parties provided the approved Class Notice to Class Members through the Claims Administrator, Rust Consulting.  The Claims Administrator administered the notice process in accordance with the Court's Preliminary Approval Order by mailing out 3,171 individual notices by April 13, 2012.  In addition, pursuant to 28 U.S.C. §§ 1711, *et seq.* and Paragraph 4.6 of the Settlement Agreement, Defendants sent notice of the proposed Settlement to the United States Attorney General and the Attorney General of South Carolina on February 6, 2012.

On May 29, 2012, Plaintiffs filed their Unopposed Motion for Final Approval of Class Action Settlement and Memorandum of Law in Support and Plaintiffs'

Motion for Award of Attorneys' Fees and Expenses and Memorandum of Law in Support, and related documents and exhibits.

Class Members had until June 12, 2012 to file objections to the Settlement or to exclude themselves (opt out) from the Settlement. No requests for exclusion (opt-outs) or objections have been filed, nor have any been received by the Court, the Parties' Counsel, or the Claims Administrator. *See* Exclusion Requests Filed Pursuant to Class Notice and Terms of Proposed Final Settlement (June 25, 2012).

The Settlement resolves this sharply contested litigation. The Settlement was reached after nearly four (4) years of litigation, substantial discovery, dispositive motions to dismiss, class certification being granted, an appeal to the Fourth Circuit briefed and decided, and extensive arm's length settlement negotiations.

**B.**     **The Terms of the Settlement**

The terms of the Settlement are memorialized in the Settlement Agreement and are summarized herein.

Under the Settlement, Class Members—advertisers in the specific local directories for which distribution is at issue—will have a choice between receiving a voucher for a specified dollar amount redeemable for future digital advertising or, alternatively, a cash award in the form of a check for a specified dollar amount.

The amount that a Class Member will be eligible to receive will depend upon the total combined amount that the Class Member actually paid for advertising in the directories and time periods covered by the Class as certified by the Court:

- If the Class Member's Total Spend exceeded $20,000, the Class Member will have the option of receiving either a voucher for $750 in digital advertising or $225 in cash.

- If the Class Member's Total Spend exceeded $7,500 but did not exceed $20,000, the Class Member will have the option of receiving either a voucher for $450 in digital advertising or $135 in cash.

- If the Class Member's Total Spend did not exceed $7,500, the Class Member will have the option of receiving either a voucher for $225 in digital advertising or $67.50 in cash.

Settlement Agreement, at ¶¶ 4.1, 6, 7.

Each Class Member will be given the opportunity to elect to receive either the voucher or the cash. Defendants are obligated to provide vouchers up to the Maximum Aggregate Voucher Amount, which is $1,000,000, and to pay cash up to the Maximum Aggregate Claims Amount, which is $300,000 less any Service Payments awarded to the Class Representatives. (Settlement Agreement, at ¶¶ 1.16, 1.17, 6, 7.) To obtain the Settlement voucher or cash payment, Class Members must complete a simple claim form that will be mailed to them as part of the claims administration process. (Settlement Agreement, at ¶ 5.2 & Ex. B.)

While Class Members have the option of receiving cash, the vouchers will provide an alternative of even greater value to many Class Members. With the increasing shift from print to digital web-based advertising, White Directory is now known as LocalEdge, and no longer uses the print-related name The Talking Phone Book. The vouchers will be redeemable for future digital advertising from LocalEdge by the Class Member.

More specifically, the vouchers will be applicable to payment for a landing page with montage video, the basic building block of LocalEdge's suite of digital advertising products. The vouchers would thus provide each Class Member electing to receive the voucher with either 10 months, 6 months or 3 months of the landing page with montage video (depending upon the Class Member's total spend during the

Class Period, as set forth above) at no cost to the Class Member.  Defendants have agreed not to require their standard 12-month minimum commitment, so that a Class Member could terminate the advertising following the period for which payment is covered by the voucher.  (Settlement Agreement, at ¶ 6.2.)

These vouchers have been designed to permit Class Members to receive free digital advertising without any cash outlay or continuing commitment, and thus are not like coupons that would provide only small percentage discounts but would require significant additional expenditures by the members of a class.  Those Class Members who are not interested in digital advertising can elect to receive the cash alternative.

Defendants will pay the costs of giving notice to the Class and the necessary and reasonable costs of administering the Settlement, processing claims, and disbursing consideration, including the cost of the Claims Administrator.  (Settlement Agreement, at ¶¶ 1.2, 5.2.)

As a further benefit to the Class, Defendants agree to make a charitable donation of any balance of the $300,000 Maximum Aggregate Claims Amount remaining after payment of the valid claims for cash, the service payments to the Class Representatives, and the costs of notice and administration.  (Settlement Agreement, at ¶ 9.)  This contribution shall be made to one or more charitable organizations to be designated by Defendants with input from Class Counsel, for use substantially in South Carolina.  (*Id.*)

Defendants agreed not to oppose an award of $5,000 each as Service Payments for Class Representatives Gray and B&K.  (Settlement Agreement, at ¶ 13.)

Defendants also agreed not to oppose an award to Class Counsel of up to $250,000 for their attorneys' fees and up to $45,000 for their expenses. (Settlement Agreement, at ¶ 12.) Any award of attorneys' fees and expenses approved by the Court will be paid by Defendants separately from, and without reducing, the cash payments to Class Members or other monetary benefits of the Settlement. (*Id.*)

The Settlement Agreement provides that every Class Member who does not opt out of the Settlement will release any and all claims arising out of or in any way relating to the sale of advertising in or the distribution of The Talking Phone Book, including, but not limited to, the claims that were or could have been asserted in this Action. (Settlement Agreement, at ¶ 14.)

## II.    THE NOTICE AS IMPLEMENTED COMPLIES WITH DUE PROCESS AND BINDS ALL CLASS MEMBERS.

This Court finds that the individual notice provided to Class Members constitutes the best notice practicable under the circumstances of this Action, meeting or exceeding all applicable requirements of Federal Rule of Civil Procedure 23, the United States Constitution (including the Due Process Clause), the South Carolina Constitution, and any other applicable law. The Notice was reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Action and the terms of the proposed Settlement, including their right to object to or exclude themselves from the Settlement and other rights under the terms of the Settlement Agreement. Notice of the Settlement was given to the Class in accordance with the Preliminary Approval Order, which required direct mail notice to each Class Member. The Court also finds that the Notice provided Class Members with accurate, fair and reasonable information regarding the Action and the Settlement. The form and

manner of notice were the best practicable notice to members of the Class and satisfy due process.

## III. THE SETTLEMENT MEETS ALL OF THE CRITERIA FOR FINAL APPROVAL.

District courts generally follow a two-step process when reviewing and approving class action settlements. This Court previously satisfied the first step of the settlement approval process by reviewing and preliminarily approving the Settlement, and approving the Notice to Class Members. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994); *see also* The Manual for Complex Litigation (Fourth) § 21.632 (4th ed. 2009) (hereinafter, "The Manual"). At this stage, the final fairness hearing, after notice of the Settlement to Class Members, the Court is now asked to consider whether the Settlement is fair, reasonable, and adequate. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991) (setting forth fairness and adequacy factors to be considered for approval of class settlement); *see also* Fed. R. Civ. P. 23(e)(2); The Manual at § 21.632.

## A. Fairness of Settlement

The pertinent factors the Court should consider in determining whether the Settlement is fair are: (1) the posture of the case at the time of settlement; (2) the extent of discovery conducted; (3) the circumstances surrounding settlement negotiations; and (4) the experience of counsel in the class action arena. *See Jiffy Lube*, 927 F.2d at 159; *see also Horton*, 855 F. Supp. at 828. The Settlement satisfies each of these elements.

When reviewing a settlement, courts should consider the stage of the current litigation and the amount of discovery that the parties have completed. This factor assists the court in evaluating whether the plaintiffs and their counsel have sufficiently

developed the case such that they can appreciate the merits of the claims. *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 244 (S.D. W. Va. 2005).

Here, Class Counsel have conducted more than three years of factual investigation and discovery into the matters alleged in this Action, and have researched and analyzed the legal issues raised by the Action, including the successful class certification motion and affirmance of the class certification Order on appeal by the Fourth Circuit. In addition to the formal discovery, including depositions and document production and review, that took place, Class Counsel conducted extensive factual investigation and legal analysis to obtain sufficient information to weigh the benefits of the Settlement against the continued risks of litigation.

Moreover, the Settlement was crafted prior to notification of the Class Members thus giving them notice and the ability to see the terms of the Settlement Agreement prior to deciding whether to opt-out or object. See *Horton*, 855 F. Supp. at 829. These factors weigh in favor of a finding of fairness.

Extensive settlement negotiations took place between Class Counsel and defense counsel over an extended period of time. Both Class Counsel and defense counsel have significant experience in the class action field.

After extensive litigation, discovery and hard fought arm's length settlement negotiations, Defendants and Plaintiffs, on their own behalf and on behalf of the Class, agreed to settle the Action to avoid the expense, burden, risk and uncertainty inherent in any litigation. Absent evidence to the contrary—and there is no such evidence—the Court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. Where, as

here, the litigation was hard-fought and the Settlement was the result of arm's length negotiations between experienced class action counselors after extensive discovery, these fairness factors are also met.

The fairness factors thus strongly favor approval of the Settlement.

## B.    <u>Adequacy of Settlement</u>

Under the Settlement, each Class Member will receive the benefit of a choice between a voucher redeemable for free digital advertising or a meaningful cash payment.  Thus, the Settlement provides each Class Member with a simple means of obtaining free advertising or cash.  The Court finds that the amount offered in Settlement is reasonable and adequate, given the claims of the Class.

The pertinent factors the Court should consider in determining whether the Settlement is adequate are: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159.  The Court has examined these factors and concludes that the Settlement is adequate.

Plaintiffs' ability to prevail on the merits is uncertain.  The Settlement confers relief that might well not be achievable through continued litigation.

While Plaintiffs have maintained that their allegations and claims are meritorious, Defendants contend that Plaintiffs' factual and legal allegations are without merit, specifically deny that they have any liability to Plaintiffs and the Class, and maintain that in any event Class Members suffered no actual damages.  If, as it

appears, the directories were widely distributed, then it is difficult to imagine that the Class would fare better through litigation, even if there is merit to Plaintiffs' claims of local distribution issues with the specific directories at issue. Defendants have raised a number of defenses to the claims asserted and will undoubtedly continue to vigorously defend this Action in the event this Settlement Agreement is not finally approved by the Court. The result of continued litigation could be no recovery whatsoever.

In aggressively litigating this case for nearly four years, Class Counsel have fully investigated the merits of the claims asserted on behalf of the Class, the defenses to those claims, and the alternatives for a class recovery in the absence of the Settlement. Based on Class Counsel's evaluation of the facts and the governing law—including Defendants' contention that even if there were a viable cause of action, Plaintiffs and the Class suffered no damages in any event—and Class Counsel's recognition of the considerable risk, expense, and delay inherent in continued litigation of this matter, Plaintiffs and Class Counsel reasonably concluded that the Settlement is in the best interests of the Class as a whole and should be granted final approval.

If the Settlement is not approved by the Court then the parties will continue to litigate these claims. *See* Settlement Agreement, at § 11. That will require the parties to conduct costly additional discovery and further proceedings. While a substantial amount of discovery has already occurred, in order to prosecute and defend these claims additional depositions of individuals and entities in multiple locations will have to be conducted, inevitable motions will have to be scheduled and heard, and, if

the case survived summary judgment, the matter would ultimately have to be tried in a likely long, complex proceeding.  These steps necessarily would involve a significant cost and burden, which the Settlement would avoid.  These concerns were a part of Class Counsel's considerations in the arm's length, extensive settlement negotiations that took place between the parties.

Neither Defendants' solvency nor the likelihood of recovery on a litigated judgment is an important factor in this case.  The Defendants' ability to pay is not in question and does not raise questions about the circumstances or adequacy of the Settlement.

Finally, the Class response overwhelmingly supports settlement.  Following notice to the Class, not a single Class Member has opted-out of, or objected to, the Settlement, and the deadline has long since passed.  The Court finds that the lack of opposition to the Settlement further indicates that the Settlement is fair, adequate, and reasonable.

The adequacy factors thus strongly favor approval of the Settlement.

For all of these reasons, the Court approves the Settlement as fair, reasonable, and adequate.

## IV.    THE COURT APPROVES THE INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES.

The two Class Representatives have had their depositions taken and otherwise assisted Class Counsel in the investigation and litigation of this complex class action. Plaintiffs request incentive awards of $5,000.00 for each for the Class Representatives for their service.  Defendants have agreed not to oppose that request.  The Court

hereby approves these incentive awards of $5,000.00 for each of the two Class Representatives, which the Court finds to be reasonable.

## V.     THE COURT APPROVES THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES TO CLASS COUNSEL.

Plaintiffs also hereby move this Court for an award of attorneys' fess in the amount of $250,000.00 and expenses in the amount of $29,352.56 in connection with this Settlement.  Defendants do not oppose this award, which Defendants will pay and will not be paid out of the funds available for the cash payments or vouchers to Class Members.

For nearly four years, Class Counsel has prosecuted the class claims against Defendants.  These claims have been strongly contested on both sides through discovery, class certification, and an appeal of the certification order to the Fourth Circuit Court of Appeals where certification was affirmed.

The scope of Class Counsel's effort has been significant.  At the outset, Class Counsel investigated the potential class claims against Defendants.  Class Counsel conducted extensive discovery in pursuit of these claims, both documentary and by deposition.  Throughout, Defendants have aggressively litigated these claims. Defendants have steadfastly maintained that Plaintiffs cannot succeed on their claims and, even assuming they could, Plaintiffs can show no damages.

Following extensive arm's length settlement negotiations, the Parties entered into a Settlement Agreement which the Court finds benefits the Class.  Despite this lengthy and hard-fought dispute, Class Counsel has achieved a Settlement that provides up to approximately $1 million in digital advertising or $300,000 in cash to Class Members.

The hours and expenses incurred in pursuit of the class claims, including the appeal to the Fourth Circuit Court of Appeals, demonstrate the scope of Class Counsel's contributions.  Through May 25, 2012, Class Counsel had incurred a total lodestar in the amount of $261,212.50.

Class Counsel seek an attorneys' fee of $250,000.00 (or 25% of the redeemable voucher fund).  A review of Class Counsel's efforts against the Barber factors, *Barber v. Furniture Distributors, Inc.*, 577 F.2d 216 (4th Cir. 1978), combined with a lodestar cross-check even without a multiplier enhancement, confirms that Class Counsel's request is appropriate to compensate the Class Counsel who have achieved this resolution for the Class.

**A.      <u>An Award of 25% of the Available Voucher Fund Is Reasonable Here.</u>**

Although the Fourth Circuit has not articulated a preferred method for determining fees in common-fund cases, there is a "consensus among courts that the percentage method is the superior method for calculating attorneys' fees from the common-fund. . . ."  *Jones v. Dominion Resources Services, Inc.*, 601 F. Supp. 2d 756, 760 (S.D. W. Va. 2009).  *See, e.g., Edmonds v. United States of America*, 658 F. Supp. 1126, 1129 (D.S.C. 1987) (percentage of the fund method employed to determine a reasonable fee); *Strang v. J.H.M. Mortg. Sec., Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995); *Muhammad v. National City Mortg., Inc.*, No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *17 (S.D. W. Va. Dec. 19, 2008) ("Awarding attorneys' fees as a percentage of the benefit to the class is the preferable and prevailing method of determining fee awards in class actions that establish common-funds for the benefit of the class.").  This may be true even though this case involves some vouchers, and fees will not be awarded from the common fund.  *See Radosti v.*

15

*Envision EMI, LLC*, 760 F. Supp. 2d 73, 77 (D.D.C. 2011) (using the percentage of the fund method where attorneys' fees not to come from common voucher fund).

Class Counsel request a fee of roughly 25% of the total recovery available. Courts often utilize percentage awards typically set at between 25% and 30% of the fund, and several courts have established benchmarks, subject to upward or downward adjustment, starting at 25%. The Manual at § 14.121. *See also Shaw v. Toshiba America, Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) (fees in range of 25% to 33.34% have been routinely awarded in class actions).

Recently, the Honorable Liam O'Grady surveyed common-fund fee awards in the Fourth Circuit and elsewhere and found percentage awards that ranged from 18% to 30%, inclusive of mega-fund recoveries that reached into the nine figure range. *See In re: The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 264 (E.D. Va. 2009).

Class Counsel's request here thus falls well within the range of previous awards in common benefit class actions.

This approach is warranted regardless of how much of the fund is ultimately claimed by Class Members. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 477-79 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," including any unclaimed portion of the fund). *Id.* at 477. *See also Skelton v. General Motors Corp., Inc.*, 860 F.2d 250-254 n.1 (7th Cir. 1988) (a settlement agreement reverter clause failed to distinguish a class settlement from a typical common-fund case because, "[i]n all common-fund cases, the defendant has at least 'a colorable claim' to any unclaimed monies"); *In Re: Cendant Corp. Prides*

*Litig.*, 243 F.3d 722, 734 (3rd Cir. 2001) ("Though this is not a traditional common-fund case, because the unclaimed portion of the settlement fund is returned to [the defendant] and because the plaintiffs who recover may not be affected by the attorneys' fees award (depending on the number of plaintiffs who recover rights from the funds), use of the percentage-of-recovery method is appropriate in this case.").[1]

**B.    The *Barber* Factors Support the Award Here.**

District courts in the Fourth Circuit routinely look to the factors set forth in *Barber v. Furniture Distributors, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), to assess the reasonableness of attorneys' fees.  Although *Barber* was not a common-fund case, this Court's consideration of the twelve *Barber* factors supports Class Counsel's request for $250,000.00 in fees.

### *Time and labor required*

In the almost four years that this litigation has remained active, Class Counsel has litigated the matter from state court, to this Court, and on appeal to the Fourth Circuit Court of Appeals.  As shown in the charts below, the attorneys for the Class have accrued 863.9 attorney hours.  The total lodestar of $261,212.50 exceeds the fee requested, and does not include any additional hours incurred from May 25, 2012 through final approval and distribution to the Class.

---

[1]    This is not a "coupon" settlement under 28 U.S.C. § 1712 because (1) Class Members can elect a cash payout as opposed to redeeming a voucher and (2) the vouchers were specifically designed to permit each Class Member to receive free digital advertising without any cash outlay or continuing commitment, and thus are not like coupons that would provide only small percentage discounts but would require significant additional expenditures by the members of a class.  In any event, as shown below, the requested fee award is highly reasonable even using the lodestar method, as Plaintiffs have shown a lodestar exceeding the proposed fee even without any multiplier.

| FIRM | Hours | Rate Range | Lodestar |
|---|---|---|---|
| **Richardson Patrick Westbrook & Brickman, LLC** <br> Attorneys: <br> Terry E. Richardson, Jr. <br> Daniel S. Haltiwanger <br> Christopher J. Moore | **521.90** | **$100 - $750** | **$192,812.50** |
| **McCravy Newlon & Sturkie** <br> Attorneys: <br> John McCravy <br> Jon E. Newlon | **342** | **$200** | **$68,500.00** |
| *Total* | *863.90* | | *$261,212.50* |

### *Novelty and difficulty of the questions involved*

This litigation involved complex issues that have been skillfully handled by Class Counsel. This was reflected in the appeal of class certification to the Fourth Circuit Court of Appeals. The issues in this case have been hotly contested by the litigants since the inception of this case.

### *The skill that is required to perform the legal services properly*

A class action proceeding requires skilled counsel to represent the class. Few law firms have the experience and the resources to pursue such litigation. Class Counsel handled this class action litigation with expertise and professionalism, not only here but in the Fourth Circuit Court of Appeals. Given the legal questions and the results obtained for the Class, Class Counsel have demonstrated an exceptional level of skill.

### *The attorneys' opportunity costs in pressing the litigation*

Class Counsel have incurred 863.90 hours of labor across two venues for litigation that is now in its fourth year. Class Counsel also spent substantial monies to finance the litigation that could not be invested in other cases.

### Customary fee

As previously noted, courts have often awarded fees to class counsel that are at least 25% of the total recovered fund.  The fee requested is well within the customary range.

### The contingent nature of the matter/the attorneys' expectations at the outset of the litigation

Class Counsel understood from the outset of this litigation that there would be no attorneys' fee if there were no recovery.  Class Counsel worked for years with no payment on this litigation and at great risk of taking no payment at all.

### The time limitations imposed by the client or circumstances

This class action necessitated extensive efforts in briefing, discovery, and protracted settlement negotiations, at times under strict deadlines.

### The amount in controversy and the amount obtained

There were numerous obstacles in this case to a recovery for the Class.  Despite these roadblocks, Class Counsel have obtained a significant recovery for the Class.  Class Counsel undertook substantial obligations and responsibilities in this litigation and produced a significant result.  Without these efforts, it is highly unlikely that the Class could have obtained any relief whatsoever.

### The experience, reputation and ability of counsel

Richardson, Patrick, Westbrook & Brickman, LLC, the Class Counsel law firm with the highest number of hours in this litigation, has an extensive background in class actions and other complex litigation, and  a history of success on difficult, high stakes litigation, including in this judicial district and elsewhere.

### The undesirability of the case

The claims at issue have been vigorously opposed and litigated all the way to the appellate level.  As noted above, there were substantial obstacles to any recovery.

***Nature and length of the professional relationship between attorney and the client***

This class action case does not involve an ongoing attorney-client relationship; however, Class Counsel serve a number of individual clients who entered this case as class representatives. Notably, no members of the Class objected to or requested to be excluded from the Settlement.

***Attorneys' fees awarded in similar cases***

Based upon fee awards in other class cases, the fee request of $250,000.00 is reasonable. Moreover, as shown below, a lodestar approach, with no multiplier whatsoever, would have yielded a larger attorneys' fee award.

**C    The Application of a Lodestar Cross-Check and Enhancement By a Reasonable Multiplier Supports the Fee Request By Class Counsel.**

In conducting a review for an attorneys' fee award in class actions, it has become customary for district courts to apply a lodestar cross-check as a method of verifying the reasonableness of the fee request. *See, e.g., The Kay Co., et al. v. Equitable Production Co.*, No. 2:06-CV-00612, 2010 U.S. Dist. LEXIS 118256, at *14 (S.D. W. Va. Nov. 5, 2010) ("I will also apply the lodestar cross-check as an element of objectivity in my analysis."); *Edmonds*, 658 F. Supp. at 1129 (comparing reasonable fee under a percentage of the fund method with the result obtained under a lodestar method of calculation).

Class Counsel incurred a total lodestar of $261,212.50 as of May 25, 2012. That number will only increase through final approval and the administration of the Settlement. "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Jones*, 601 F. Supp. 2d at 766 (collecting cases). But here, even if there were no multiplier enhancement, the fee

award requested by Class Counsel would be reasonable, as the lodestar exceeds the fee award requested.

Accordingly, under either method, the requested attorneys' fee award is reasonable.

**D.**     **The Requested Expenses Are Reasonable.**

Plaintiffs seek reimbursement of $29,352.56 in out-of-pocket expenses.  The Court has reviewed the expenses and concluded that they are reasonable and reimbursement is appropriate.

<u>**FINAL SETTLEMENT APPROVAL AND FINAL JUDGMENT**</u>

Based on the foregoing,

IT IS HEREBY ADJUDGED, ORDERED and DECREED that:

1.     This Court has jurisdiction over this action and the claims asserted and settled in this proceeding, personal jurisdiction over the Class Members, and subject matter jurisdiction to approve the Settlement.

2.     Notice given to the Class was reasonably calculated under the circumstances to apprise Class Members of all material elements of the Settlement and their opportunity to exclude themselves from the Settlement or to object to, or to comment on, the Settlement and to appear at a fairness hearing.  Notice to the Class Members was the best notice practicable under the circumstances and complied fully with the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the South Carolina Constitution and any other applicable law.  Accordingly, the Court determines that all Class Members are bound by this Judgment.

3.     The Court hereby grants final approval of the Settlement and finds that it is fair, adequate, reasonable and in the best interests of the Class Members. Judgment is hereby entered in accordance with the terms of this Judgment and the Settlement.

4.     All Class Members have released and forever discharged the Released Claims.  All Class Members are barred and permanently enjoined from asserting or prosecuting the Released Claims.

5.     The Court approves incentive awards (service payments) of $5,000 each to Class Representatives William B. Gray, III, d/b/a Greenwood Clinic of Chiropractic ("Gray") and B and K Services, Inc. ("B&K").

6.     The Court approves an award to Class Counsel of attorneys' fess in the amount of $250,000.00 and expenses in the amount of $29,352.56 in connection with this Settlement and this Action.  The Court hereby finds this award of fees and expenses is fair and reasonable and does not in any way undermine the fairness of the Settlement.

7.     Without affecting the finality of this Judgment, the Court shall retain exclusive and continuing jurisdiction over this Action and the Parties to it, including all Class Members, to the full extent necessary to enforce the Settlement.

8.      The Settlement is expressly incorporated herein by reference, and will have the full force and effect of an order of this Court.  The Parties shall consummate the Settlement according to its terms.

IT IS SO ORDERED

G. Ross Anderson, Jr.
Senior United States District Judge

August 10, 2012
Anderson, South Carolina